IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK LETOURNEAU, ET AL.,

    Plaintiffs,

v.

VENTURE CORPORATION,

    Defendant.

Case No. 15-CV-2629-JAR

## MEMORANDUM AND ORDER

Plaintiffs Mark LeTourneau and Deborah LeTourneau bring this action to recover personal injury damages arising from a motorcycle accident where Mark LeTourneau alleges he lost control of the motorcycle as the result of uneven pavement on the highway. The State of Kansas Department of Transportation ("KDOT")[1] hired Defendant to perform the improvements to the highway that led to the alleged uneven pavement. Plaintiffs' Complaint alleges Kansas state law claims of negligence, negligence *per se*, and loss of consortium.[2] This matter is before the Court on Defendant's Motion for Partial Summary Judgment (Doc. 67) as to the negligence *per se* claim. The motion is fully briefed, and the Court is prepared to rule. For the reasons explained in more detail below, the Court grants Defendant's motion for summary judgment.

**I.    Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3] In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[1] Defendant KDOT and Defendant Mike King, the secretary of transportation for the State of Kansas, were dismissed from this action on December 16, 2014 on the basis of Eleventh Amendment Immunity. Doc. 12.

[2] Doc. 1.

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

the light most favorable to the nonmoving party.[4] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence regarding an essential element of the other party's claim.[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[11] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[4] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5] *Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 2004)).

[7] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (internal quotations omitted).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[12]

The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[14] The nonmoving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[15]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[17]

## II. Uncontroverted Facts

The following facts are stipulated to by the parties.[18] On October 9, 2012, Plaintiff Mark LeTourneau was involved in a single-rider motorcycle accident on United States Highway 281 in Barton County, Kansas at approximately mile marker 108. At the time and in the location of the accident, Highway 281 in Barton County was under construction. KDOT owned, controlled, and

---

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[13] *Adams*, 233 F.3d at 1246.

[14] Fed. R. Civ. P. 56(c)(4).

[15] Fed. R. Civ. P. 56(c)(1); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted); *see also Celotex*, 477 U.S. at 323–24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses").

[16] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[17] *Conway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[18] Doc. 66.

maintained Highway 281 at mile marker 108. Defendant was performing construction work on Highway 281 in the location of the accident under a contract with KDOT.

The construction work Defendant performed at the location involved a three-fourth inch mill and a one and one-half inch thin hot mix asphalt ("HMA") overlay. KDOT planned, approved, designed and specified the traffic control plan for the construction work Defendant performed on Highway 281. At the time and in the location of Mark LeTourneau's accident, the entire width of Highway 281 had been milled and an HMA overlay had been installed in the northbound lane. Mark LeTourneau was traveling north in the northbound lane of Highway 281. He traveled off the northbound lane and on to the east shoulder, which was milled. While attempting to transition back into the northbound lane from the east shoulder, Mark LeTourneau lost control of his motorcycle and crashed.

## III. Discussion

The issue presented for summary judgment is whether a violation of K.S.A. § 68-2102 can form the basis of a negligence *per se* claim under Kansas law. The elements of negligence *per se* under Kansas law are: "(1) a violation of a statute, ordinance, or regulation, and (2) the violation must be the cause of the damages resulting therefrom."[19] Also, the plaintiff must establish that an individual right of action for injury arising out of the violation was intended by the legislature.[20] The determination of whether an individual right of action exists under a statute is a question of law.[21] In determining whether an individual right of action was intended, courts generally employ a two-part test: (1) "the party must show that the statute was designed to protect a specific group of people rather than to protect the general public," and (2) "the court

---

[19] *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004) (citing *Cullip v. Domann*, 972 P.2d 776 (Kan. 1999)).
[20] *Id.*
[21] *Id.* at 594.

4

must review legislative history to determine whether a private right of action was intended."[22] While some statutes expressly impose personal liability, the absence of such an express provision does not necessarily negate legislative intent that the statute creates a private right of action.[23] In the absence of express provisions, the legislative intent to grant or withhold such a right is determined primarily from the language of the statute.[24] Courts may also consider the nature of the evil sought to be remedied and the purpose the statute was intended to accomplish.[25]

> K.S.A. § 68-2102 provides:
>
> Every person who shall have entered into a contract to make any improvement, or any municipality which has undertaken for itself the making of any improvement, shall, where the work so undertaken requires the closing of any highway or the rendering of the same impassable or dangerous to travel while such improvement is being made, place at the intersection of all highways leading thereto, barricades and warning signs, advising the public that the highway is closed or is impassable or dangerous to travel.

Defendant's only contention for summary judgment is K.S.A. § 68-2102 is not intended to create a private right of action. As a threshold matter, Plaintiffs argue Kansas courts have already established K.S.A. § 68-2102 as a private right of action. Plaintiffs rely heavily on *Kelley v. Broce Construction Co.*[26] for the proposition the Kansas Supreme Court has found K.S.A. § 68-2102 is a private right of action. In *Kelley*, the Kansas Supreme Court considered whether Broce, a road contractor, was negligent in violating K.S.A. § 68-2102.[27] The jury verdict established that "insufficient lighting" was the act of negligence that was the proximate

---

[22] *Id.* (citing *Nichols v. Kan. Political Action Comm.*, 11 P.3d 1134 (Kan. 2000); *Nora H. Ringler Revocable Family Tr. v. Meyer Land & Cattle Co.*, 958 P.2d 1162 (Kan. Ct. App. 1998)).

[23] *Id.* at 593.

[24] *Id.* at 593–94.

[25] *Id.* at 594.

[26] 468 P.2d 160 (Kan. 1970).

[27] *Id.* at 166.

cause of injury.²⁸ The Kansas Supreme Court held Broce had a duty to provide a barricade and warning lights on the highway pursuant to the statute.²⁹ This case involved ordinary negligence, and the statute was used to establish a duty of care.³⁰

The Court finds this case distinguishable from *Kelley* because *Kelley* involved ordinary negligence whereas here, Plaintiffs assert a negligence *per se* theory. Negligence and negligence *per se* are distinguishable in "the means and the method of ascertainment, in that negligence must be found by the jury by the evidence, while negligence *per se* results from violation of a specific law or ordinance."³¹ Thus, *Kelley*, which analyzes the statute as a means for establishing a duty of care for negligence, is not applicable to negligence *per se* analysis.³² Further, *Kelley* did not and could not have addressed whether K.S.A. § 68-2102 established a private cause of action because determining whether a statute create a private right of action was added to negligence *per se* analysis in 1991 after *Kelley* was decided.³³ Thus, this case did not establish that K.S.A. § 68-2102 created a private right of action.

Further, the other cases Plaintiffs cite are also inapplicable to analysis of whether K.S.A. § 68-2102 establishes a private cause of action. In *Schroder v. Braden*, the Kansas Supreme Court considered whether K.S.A § 68-2102 created an obligation on contractors to place signs

---

²⁸ *Id.*

²⁹ *Id.* at 167.

³⁰ *See id.*

³¹ *H. Wayne Palmer & Assocs. v. Heldor Indust., Inc.*, 839 F. Supp. 770, 774 (D. Kan. 1993).

³² *See also Shirley v. Glass*, 308 P.3d 1, 6 (Kan. 2013) (concluding that the plaintiff had not pleaded a negligence *per se* claim as a separate cause of action created by statute but, instead, she was asserting only a claim of "simple negligence" that relied on federal and Kansas statutes prohibiting the distribution of firearms to felons to define the standard of care).

³³ The Kansas Supreme Court added the element requiring plaintiff to establish that an individual right of action was intended by the legislature in 1991 in *Schlobohm v. United Parcel Service, Inc.* 804 P.2d 978 (Kan. 1991), abrogated on other grounds by *Shirley v. Glass*, 308 P.3d 1 (Kan. 2013) (analyzing language in *Schlobohm* in the context of establishing the duty of care for ordinary negligence). This element was added more than twenty years after *Kelley* was decided in 1970.

and barricades on the roadway while under construction.³⁴ For purposes of establishing a duty of care for negligence, the Kansas Supreme Court found the contractor was under no duty to place signs and barricades on the roadway for which it was removing a culvert.³⁵ There is no mention of the statute creating a private right of action for purposes of negligence *per se*. Further, in *Fountain v. Se-Kan Asphalt Services, Inc.*, the Kansas Court of Appeals considered whether a road contractor had a duty of care "to the public" for purposes of a wrongful death action to maintain roads used in traveling to and from a construction site.³⁶ The court held that K.S.A. § 68-2102 did not extend duties to a highway in which a contractor is using only for travel.³⁷ Yet again, there is no mention in *Fountain* of the statute creating a private right of action for purposes of negligence *per se*.

Given there is no relevant case law deciding whether K.S.A. § 68-2102 establishes a private right of action, the Court must first decide whether K.S.A. § 68-2102 is designed to protect a specific group of people or the general public. Plaintiff argues that the specific group of people the statute was designed to protect is "those travelers who would come upon such specific construction or improvements in the road while traveling" rather than the general public.³⁸ Further, Plaintiffs argue that while the statute applies to specific persons, it also applies to specific types of road construction—those requiring road closure, impassable conditions, or dangerous travel. As Kansas courts have acknowledged, the case law considering the doctrine of

---

³⁴ 391 P.2d 1005, 1008 (Kan. 1964).

³⁵ *Id.*

³⁶ 837 P.2d 835, 839–40 (Kan. Ct. App. 1992).

³⁷ *Id.* at 841.

³⁸ Doc. 69 at 5.

7

negligence *per se* is "inconsistent" and has led to some "curious results."[39] However, the Court will attempt to decipher based on the relevant Kansas Supreme Court case law whether this statute is applicable to the public or a more specific group.

In *Schlobohm v. United States Parcel Services*, the plaintiff was injured when she fell in an entranceway that violated the building code.[40] The Kansas Supreme Court acknowledged the general rule that statutes enacted to protect the public at large do not give rise to a cause of action for negligence *per se*.[41] Still, the court found that the building code section was enacted to protect a special class of individuals "who enter and exit doorways from injury caused by tripping over an improper elevation differential between the floor and threshold."[42]

In *Kerns v. G.A.C., Inc.*, the plaintiff, a six-year-old child, fell into a closed swimming pool at a mobile home park and nearly drowned.[43] The plaintiff sued under a negligence *per se* theory, citing a city code provision regarding the maintenance of closed swimming pools.[44] The district court allowed the claim to go to the jury.[45] On appeal, the Kansas Supreme Court stated the general rule that a violation of an ordinance could not establish negligence *per se*.[46] However, the court held that the "swimming pool ordinances were enacted to protect a special class of person—those who gain access to a closed pool and require rescuing, a class of which included [the plaintiff]."[47]

---

[39] *Shirley v. Glass*, 241 P.3d 134, 160 (Kan. Ct. App. 2010) (Malone, J., concurring) (considering the history of negligence *per se* doctrine in Kansas case law), *overruled by Shirley v. Glass*, 308 P.3d 1 (Kan. 2013).

[40] 804 P.2d 978, 980 (Kan. 1991), *abrogated on other grounds by Shirley v. Glass*, 308 P.3d 1 (Kan. 2013).

[41] *Id.* at 981.

[42] *Id.* at 982.

[43] 875 P.2d 949, 953 (Kan. 1994).

[44] *Id.* at 955.

[45] *Id.*

[46] *Id.* at 962.

[47] *Id.*

Most recently, in *Pullen v. West*, the plaintiff filed a claim asserting negligence *per se* where the plaintiff sustained injuries during a Fourth of July fireworks display at the defendants' home.[48] The plaintiff claimed the defendants violated Kansas statutes, rules, and regulations governing fireworks displays, in part by failing to follow the rules and regulations of the National Fire Protection Association ("NFPA") pamphlet No. 1123.[49] While the Kansas Supreme Court recognized portions of NFPA No. 1123 applied to certain groups of people, "the overall purpose of NFPA 1123 is not just to protect those individuals watching or putting on the display because the danger certainly exists that others (the general public) might be harmed by the storage, use, or transportation of fireworks."[50] The Kansas Supreme Court held the statutorily incorporated safety standards for fireworks displays did not support a cause of action for negligence *per se* because the regulations were enacted for the protection of the general public.[51] Although the ordinances in *Schlobohm* and *Kerns* appeared to be enacted for the protection of the general public, the Kansas Supreme Court in *Pullen* moved to consideration of the express legislative purpose of the statute to determine whether the statute was applicable to the general public or a narrower group.[52]

Thus, the Court here will employ the most recent approach of the Kansas Supreme Court in *Pullen*. First, in the express language of the statute, K.S.A. § 68-2102 states that the statute is designed to "advis[e] the *public*" that the road is closed.[53] The plain language makes clear this

---

[48] 92 P.3d 584 (Kan. 2004).

[49] *Id.* at 593.

[50] *Id.* at 596.

[51] *Id.* at 597.

[52] *Id.* at 595 ("[T]he express legislative purpose in directing the state fire marshal to adopt reasonable fireworks rules and regulations is 'for the safeguarding of life and property from fire, explosion and hazardous materials.' K.S.A. 31–133(a). The scope of this enabling legislation is thus very broad and is not limited to enacting rules and regulations specifically for those involved in fireworks displays.").

[53] K.S.A. § 68-2102 (emphasis added).

statute is drawn to protect the public at large rather than a narrow or specific group. Second, the courts have interpreted the statute's purpose as "placing duties on contractors to take steps to protect the *public* in the area involved in a construction project. It clearly encompasses *all* roads under the contractor's control during a construction or repair project."[54] Thus, K.S.A. § 68-2102 has been interpreted broadly in its language. Third, there is no express provision allowing for a private cause of action. If the legislature truly intended for the statute to cover a narrower group than the general public, it could have inserted such language into the statute. For instance, instead of stating barricades and signs should be erected to advise "the public," it could have stated the barricades and signs should be erected to advise "oncoming travelers" or "travelers who happen upon the closure." Given the brevity of the scope of the statute's express language, the Court finds that K.S.A. § 68-2102 is intended to protect the public.

Further, even if the statute applies to a narrow group rather than the general public, the court still must consider the legislative history of the statute to determine whether a private right of action was intended.[55] Where legislative history is lacking, Kansas courts have considered the number of amendments to the statute and whether the legislature granted a private right of action in such amendments.[56] Kansas courts also will generally not infer a private cause of action where a statute provides criminal penalties but does not mention civil liability.[57] When

---

[54] *Fountain v. Se-Kan Asphalt Servs., Inc.*, 837 P.2d 835, 840 (Kan. Ct. App. 1992) (emphasis added).

[55] *Kan. St. Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 591, 603 (Kan. 1991) (deciding K.S.A. § 38-1522, which required school employees to report abuse, protected children rather than the public, but the legislature did not intend a private right of action).

[56] *Id.* at 604 (pointing to the fact that the statute has been amended five times and stating "[i]f the legislature had intended to grant a private right of action in K.S.A. § 38-1522, it would have done so.").

[57] *Pullen*, 92 P.3d at 597 (citing *Greenlee v. Bd. of Clay Cty. Comm'rs*, 740 P.2d 606, 610 (Kan. 1987) ("It would appear that the legislature has thoroughly addressed the legislative remedies for violation of the cash-basis law and the budget law, and that failure to provide a private cause of action for an individual citizen was intentional."); *Loar v. Roletto*, 982 P.2d 993 (Kan. Ct. App. 1999) (concluding where legislature provides criminal and administrative remedies for violation of Kansas Automobile Injury Reparations Act, "[t]he absence of a provision securing a private cause of action appears to be intentional"); *Gietzen v. Feleciano*, 964 P.2d 699 (Kan. Ct.

elaborating on this point, the Kansas Supreme Court explained when the wrong perpetrated by the defendants "became a wrong only [because] the legislature made it so," then the "statutorily created wrong is to be remedied in the manner prescribed by the legislature."[58]

The parties do not cite nor could the Court find legislative history addressing whether K.S.A. § 68-2102 is intended to create a private right of action. Further, the legislature has amended K.S.A. § 68-2102 twice since it was enacted in 1957. In both the 1995 and 2004 amendments, there is no indication that the legislature considered or granted a private right of action. Thus, the legislative history does not indicate intent to create a private right of action.

K.S.A. § 68-2107 is the penalties section for violations of K.S.A. § 68-2102. It prescribes that any person "failing, neglecting or refusing to comply with the provisions of this act . . . shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than $10 nor more than $100, or imprisoned for not less than 10 days nor more than 90 days, or by both such fine and imprisonment."[59] These penalties are solely criminal in nature, so violations of K.S.A. § 68-2102 are meant to be remedied in this manner. There is no indication that civil remedies may be sought. Thus, the Court is unwilling to infer a private cause of action for a statute with solely criminal penalties. In conclusion, the Court finds the legislative history does not indicate K.S.A. § 68-2102 is meant to create a private right of action.

The authority cited above establishes that the Kansas legislature did not intend to establish an individual cause of action for violations of K.S.A. § 68-2102. Therefore, the Court

---

App. 1998) ("The legislature saw fit to limit the relief from a violation of the [Campaign Finance Act] to a complaint before the Commission [on Governmental Standards and Conduct]. It did not provide a cause of action for damages in favor of a party aggrieved about a violation, and we will not read one into the statute.")).

[58] *Nichols v. Kan. Political Action Comm.*, 11 P.3d 1134, 1145 (Kan. 2000).

[59] K.S.A. § 68-2707. To the extent that Plaintiffs argue these penalties are not strong enough, this is the province of the legislature, not the Court.

concludes that the doctrine of negligence *per se* is inapplicable to this case. Thus, summary judgment is properly granted in favor of Defendant on the negligence *per se* claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Partial Motion for Summary Judgment (Doc. 67) is **granted**.

**IT IS SO ORDERED.**

Dated: June 1, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE